The sole statutory provision at issue in this case prohibits bias-motivated assaults that interfere with commercial or other economic activity in which a victim is engaged at the time of the assault. A jury here found that the defendant violated that statute by assaulting his co-worker who is actively preparing packages for interstate shipment in an Amazon warehouse. The question presented is whether this prosecution is constitutional under the Yes, the jury found something about commerce, which is that... But not interstate commerce. No, that was not, the jury did not need to make such a finding and that flows from the arson cases where this court has held, for example, in the case with the daycare center that even though the daycare center operated fully within the city of Raleigh, that it was still federalized, federally criminalizable to prosecute the defendant for setting fire to such a property that was in commerce. That was what the act was done upon. And here the act was done upon the victim. Yes, and the victim was also directly engaged in ongoing active commercial activity and the assault here interfered with his ability to continue doing so. To me, an unusual case, particularly when you look at the statute, you have multiple prongs to proceed, all of which include specific provisions regarding crossing a national border, interstate or foreign commerce, using an instrumentality of interstate or foreign commerce, except this one, which doesn't have that requirement. Now, you all even amended the indictment to take out the interstate or foreign commerce provision that was in the with this is that there's an underlying economic activity that, like in the arson cases, animal fighting, marijuana business, and the action is upon that. Here it seems like you're reaching for the jurisdictional element to then sort of backdoor it in order to get to a cognizable interstate activity. No, your statute works exactly the same way the arson statute does. The arson statute prohibits arson, which is a non-economic act, only where it targets a building that is actively employed for some commercial purpose. Same thing here. This statute targets bias-motivated assaults, which is conceitedly non-economic conduct, but only where it interferes with ongoing commercial activity. And so if you think, one way to think about this case is that if Amazon had a machine that did exactly what Curtis Tibbs was doing in this case, collecting items, putting them in a box, and packaging the box, and James Hill, the defendant here, had set fire to such a machine, he could be prosecuted for federal arson fully consistent with the Commerce Clause in line of this court's precedent and Supreme Court precedent. And it makes no difference here that it's a person who is actively engaged in ongoing commercial activity as opposed to a piece of property that is engaged in ongoing commercial activity because the defendant's acts directly interfered with that ongoing act of commerce. That's factually, obviously you're factually right, but these other cases have some instrumentality, I think, I still do, that has some direct interstate commerce impact. Here all you've got is a finding by the jury that there was some impact on commerce. And that's the same finding that you have in the arson cases, where there's no requirement in the arson cases that a jury find that the daycare center affected interstate commerce in any way. Even if the daycare center were operating fully within intrastate commerce and a defendant's arson targeted such a building, non-economic act of arson targeted a building that was fully engaged in intrastate commerce, this court is still held that the federal government can prosecute for federal arson in that In the United States v. Jones case, you've got an arson statute there in which the court says that it applies when properties are used. It would be somewhat odd to say that when properties are used in commerce and not when labor is used in commerce in connection with criminal activity. Exactly, Your Honor. There's just no distinction between directly interfering with property that is actively employed for a commercial purpose and interfering with the person who is actively engaged in some ongoing commerce. So you would concede, or do you concede, that it doesn't matter if the physical assault itself is economic? We would concede that a physical assault by itself is not economic. The physical assault has to, there needs to be some sort of subsequent element in the statute that requires a commercial connection, which is exactly what this provision requires. Would the government prosecute then any physical assault at a workplace? Your Honor, I think that that would raise a more complicated... There's commerce going on, remember, because I gave you the definition that it's work. Yes, Your Honor. I think that, you know, there are, courts have been sensitive that these are different, that the fact pattern really matters in these commerce cases. So if you look at the federal arson statute or the Hobbs Act, it really matters what exactly is going on and how exactly the relationship is working. And again, this statute requires... So it applies here because it's an Amazon facility and engages in interstate commerce? Is that what you're saying to me? Your Honor, here we have a confluence of factors. We have the victim who is engaged in work for pay at an Amazon warehouse where he is packaging goods for interstate shipment. So we have all of these facts here. And so on, so the narrowest sort of basis for this court to conclude that this prosecution is within the commerce clause is to say that when you have direct interference with that sort of ongoing commercial activity, that's certainly sufficient. And so there may be... You took interstate and foreign commerce out of the indictment. No... You don't have a jury finding to that effect. And in these other cases, whether it's firearms or animal fighting or arson, it's the act of the defendant upon this particular product that's an instrumentality in commerce. Here you've got an extra step, which may be sufficient, but it's the act upon the victim who in turn has some other relationship to an economic factor. And I don't think there's a case that's done that. No, I don't think that's quite right, Your Honor. I think that the statute is... The arson statute is exactly how this works, which is that the building is actively employed for some commercial purpose or the property. It can be a building or property. And it's actively being used for some commercial purpose and an arson targets it. It can be purely intrastate commerce. It doesn't need to substantially affect interstate commerce. And still, if a jury... That's the defendant acting upon that instrumentality. Here you've got the defendant acting upon a victim who happens to be, as an additional factor, engaged in some other activity. And all I'm saying is I don't think you have a case where you have the action of the defendant... The other case is it's the action of the defendant upon the object that matters. Here it's the action of the victim upon the object that you say brings you a jurisdictional hook. No, Your Honor. I would disagree with that just because the defendant's action upon the object, the object here being a person who's packaging goods for interstate shipment, is what brings us within commerce. In the same way that a defendant's fire to the object, a building that is actively used for commercial purpose, is what brings it within the Commerce Clause. So I think it works the same way, whether it's the arson statute or this statute. And this statute, I think, has some specific language that really shows the narrowness of it, which is that you have to have interference, you have to have commercial or economic activity, and that activity has to be going on at the time of the assault itself. So that's why I don't think you need to go so far as to say that all workplace assaults, for example, would fall within the Commerce Clause, because this statute is much narrower. But there's a limiting principle here, though. So the limiting principle here is factually we have... Congress gave a limiting principle in all the other sections of the statute. They've got specific language everywhere but here, specifically dealing with interstate or foreign commerce. It's not in this particular subsection of the statute, which is what you chose to prosecute under. So it seems like to me that you've got to add quite a few inferences in order to get to where you need to go. No, Your Honor. I think that this statute, this text of the statute on its face ensures that no inferences are needed, because you have to have direct interference with commercial or economic activity that's going on at the time. So in each case, there needs to be commercial or economic activity that the victim is engaged in at the time where he or she is assaulted, and he must no longer be able to engage in whatever commercial or economic activity that he's engaged in at the time. Right. So this goes back to the earlier question. What's the limiting principle, if there is one, that separates this particular prosecution from all other workplace assaults or all workplace assaults that involve these circumstances, federalized? Your Honor, the limiting principle here is that the defendant was engaged in commercial activity at the time. He was literally put in carrying boxes. He turned around to pick up another package, and he gets punched in the face, and the boxes fly through the air. And the facts really matter in these cases, as this Court recognized in its prior opinion when it said that complex constitutional issues can be avoided if a prosecution doesn't result in conviction. So all the Court needs to do is, on these facts, where you have a victim who is actively packaging goods for shipment, and he gets punched in the face, the goods fly through the air, scatter across the floor, and he's no longer able to package goods for interstate shipment, which is work that he was doing for compensation, under that very specific set of facts, this as-applied challenge must fail. If the victim here had simply just been standing and not actively engaged in the packing, then would the statute apply? Your Honor, I think possibly not. I think that that would be a question of fact that you, I think that's a question of fact that would need to be addressed sort of at the various threshold steps of whether the Attorney General would certify that prosecution, whether a grand jury would indict, and whether a petit jury would convict. And you need all those steps before answering that sort of constitutional question. The government is not espousing a broad ruling of this statute here. The government is espousing a narrow ruling of this statute. Yes, Your Honor. This is on an as-applied challenge. Do you have a copy of the statutory language in front of you? Yes, Your Honor. Okay. Do you glean anything? I'm looking at 4.1 and 2. Are you with me? Yes. Do you gain any, do you glean anything from the fact that 4.2 says otherwise affects interstate or foreign commerce? In other words, that's suggesting that 1 affects interstate. Does the government espouse that position? Yes, Your Honor. I think the way that these two provisions relate is that 4.1 is about direct interference with ongoing commercial activity, and 4.2 is about more attenuated perhaps connections to commerce. So that the otherwise affects, you would say you read that language of 2 telling you about 1. Correct. Yeah. And I think, you know, we removed 4.2 from this case because we wanted to remove the idea that you need to think about other more attenuated connections. So the district court was concerned about, you know, if somebody's commuting to work and they get assaulted and they're not able to go to work, would that fall within Congress's Commerce Clause Authority and things like that. And I just don't think you need to think about things like that in this narrow as-applied challenge because we're only relying on the statutory language about at the time, not the more broad, I think, more sort of attenuated connection of otherwise affects. Do you read 2 in response to Judge Motz's question to include interstate or foreign commerce? I mean, 1, to include that. No, 4 was not required that a jury find in each individual case that there is an impact on interstate commerce. But in trying to decipher, is there a clue from the statutory language? It seems like to me you could read that subsection 2 to indicate that by purposes of exclusion, 2 otherwise affects interstate or foreign commerce because 1 does not. No, Your Honor. So 4.1, it interferes. I know you disagree with that, but it seems like to me that is a plausible reading. Right. But I think that's incorrect for this reason. So 4.1 is a category of conduct that Congress has chosen to regulate, which is direct interference with ongoing active commercial activity. It doesn't need to be interstate commercial activity and it doesn't need to be substantial commercial activity. Congress can rationally regulate that category of conduct because this Court and the Supreme Court have always said that Congress has the power to regulate direct interference with ongoing active commerce, even if the interference only affects intrastate commerce and even if the interference doesn't substantially affect interstate commerce by itself in each case. So this category of conduct encompassed by 4.1, I think is a rational choice that Congress made in light of this Court's precedent and the Supreme Court precedent. Even Taylor, I think, said this, you know, in order for aggregation to apply, it only applies where there's an underlying economic activity. So then it depends on whether or not you say, well, what does the statute regulate? Is it the punch in the face or is it the punch in the face plus using the jurisdictional element to bring in something else? Yes, Your Honor. And my point is I don't think there's another case that's done that. I think the arson cases do do that, Your Honor, and I think the Gun-Free School Zones Act cases all do this. So I think when you read the statute... Schools use instrumentality of foreign commerce. Sure. Gun has passed as an instrumentality in foreign commerce. But... Not this case. Yes, Your Honor. But the underlying premise is the same, is that Congress took something that it could not otherwise regulate, gun-free school zones, and made it constitutional by adding in another element that the government has to prove in each case. And so when you're deciding whether this statute criminalizes economic conduct or violent conduct, you have to look at all of the elements of the statute. And this statute prohibits violent conduct that interferes with ongoing active commercial activity, and that is a regulation of economic conduct as well as violent conduct. I see that I'm out of time, so I'll sit down. Thank you, Your Honor. Good morning. May it please the Court. What the government is asserting here is a power to regulate all economic activity, and Congress doesn't have that power. So I'd like to push back on the government's analogy to the arson statute because I think it's distinct from this one. Arson is an economic activity, although not all arsons are federal arsons. If I burn your house down, you've suffered an economic harm because you've lost your property and you have to rebuild your house. But not all arsons are federal arsons if those buildings aren't used in interstate commerce. And my experience is that a jury does have to find use in interstate commerce as an element of those crimes. It's not something that's a given. So real property can fall within the interstate commerce but not labor? To be blunt, Your Honor, yes. That Congress has— Directed from Jones because under Jones all it was was an arson of property. That's true. Here you have an individual who is actively engaged in an activity that is regulated by the United States government. And you're saying that that falls outside of it whereas simply an arson on real property falls within it. Does that make any sense? Well, what I can tell you, Your Honor, is that Congress has different and broader tools when it comes to regulating the economy and businesses and markets than it does when it comes to regulating people. That's why Congress can regulate the healthcare market but can't force people to buy healthcare because it's just a different—it's a step too far. And so the jurisdictional hook here has to bring the regulated activity within the Lopez categories. And all of the other jurisdictional prongs here do that by tying it to, for example, the channels or instrumentalities of interstate commerce. But if the prong here is as broad as the government says it is, all of those would be superfluous because the truck driver is engaged in economic or commercial activity and you wouldn't need the other jurisdictional prongs. Well, not all hate crimes are economic. But when they interfere with economic activity, why wouldn't we say that's what the statute prohibits? Well, that is what the statute prohibits, but that's not constitutional because it has to be— Why wouldn't we say that fits within the commerce definition, the Commerce Clause definition, of the interference with it? If it is an activity the individual is performing, that's an interstate activity. Well, a couple of responses. One is Lopez tells us that it has to be a substantial interference and the jury here didn't find that. And then second, as Judge Agee pointed out, the jury didn't find and the facts in the record don't show. Your client is not someone who came from the outside. He's right there working in it, I assume, doing the same thing, engaged in working on an activity that clearly is within interstate competence because the United States government regulates it and it's part of commerce. But Congress doesn't have the power to regulate everything that happens in the workplace when it comes to interpersonal conduct, when we're not talking about an economic regulation. And the jurisdictional hook doesn't make this an economic regulation. So to take Torres v. Lynch, the Supreme Court case that examined the jurisdictional hook of the arson statute, said that you don't want a tail wagging the dog situation. The jurisdictional hook is not the regulated activity. The essence, the nature of the statute is here interpersonal violence. The government has conceded that's not an economic activity. And so when Congress wants to regulate something that's not an economic activity, it can only do so when that act has a substantial interference with interstate commerce. And the jury didn't find that here. The facts don't support that finding. Clearly, if it was mailroom employees in a United States post office, it fits, right? Well, even leaving aside federal territorial jurisdiction in that situation, that's certainly a much closer case. And we're making an as-applied challenge, not a facial challenge. So somebody at the Amazon facility – They're delivering mail. They're not on the territory. They're out and the postman is out delivering the mail. We don't have any dispute with that. Tell me that answer. You've got a postman who's delivering the mail and he's putting it in your box. Another guy comes up and assaults him on the basis that's clear here. There's no question this is a hate crime, I take it, right? Not on these facts. Absolutely attacked this individual because he happened to be gay. He said it, right? That's what the jury said. No question about that. So does that same thing to someone who's delivering mail. The differentiation is what? Well, that person is in the channels or instrumentalities of commerce by being part of the shipping conduit of that. And it may be a closer case if it's, for example – Under Roman numeral two. Yes, and so somebody putting the box on the truck is a closer case. Roman number two, when you're looking at it, is that more of a catch-all type revision there? No, I'm sorry. The otherwise affects interstate or foreign commerce? Actually, I meant the little I. Right, little Roman. Right, that's a channel facility or instrumentality of interstate or foreign commerce or using a channel of foreign commerce. And that's why the other cases that have been brought under this statute have used those other jurisdictional prongs. So there's a vehicle or some weapon that traveled in interstate commerce. This jurisdictional prong is unique. As far as we can tell, it's unique in the entire federal code. This is not language that's a term of art that's been construed by courts. It's only been applied, as far as we know, one other case in the country. And in that one, the defendant pled guilty to an information, so it wasn't even litigated. So this is so overbroad that it would sweep in any commercial activity. And Gonzalez v. Rage – Is there any question that Congress has, at least in this instance, regulated the preparation of these goods that are going to be shipped in interstate? Congress has the power to regulate that, yes. And so someone who interferes with that, you maintain that we don't have a situation that allows for interstate commerce? Only if there is a substantial interference. So that's our question. You're saying there is interference, but you're saying it's not substantial. I'm saying that Congress can't regulate an interference that is not substantial. No, I understand that point you're making. Because when we look at it at the bare bones, you seem to agree there's interference, yes, because Congress can regulate this activity. Someone comes and interferes, there is interference, but your differentiation seems to be it's not substantial. That's correct, and that's a constitutional difference. Well, because Amazon didn't miss a beat here. There were no packages that were not shipped as scheduled. There was no difference with any other shift at any other time. That's the expert testimony that came out at trial. If you had that, then all of a sudden we can do it. Well, that's a little bit more being done here that shows, I say, you had to shut it down for 20 minutes or so, then boom, yeah. But you're saying because we can't prove it to be substantial, because I understand you say, yes, there's interference, but it's not substantial, but this so-called substantial, we've got to sort of now measure up. Well, who decides what is substantial? Do we do that, or does the jury do it? Well, let me take a couple of points there. I want to get that answer. Will the jury decide a question of whether it's substantial, or do we decide? It would be a jury question of fact, but it's a legal question about whether this is activity that Congress can regulate at all. Why did the jury decide here? The jury decided only that the victim was engaged in commercial activity. That's all that was required to find. It didn't, and found an interference with that. Now, we dispute that there's an interference at all, as viewed from Amazon's perspective. You say it's not substantial, whereas impliedly in the jury's finding, they had to find it was substantial, and so you disagree with the jury. The word substantial was not in the jury instructions. The jury only had to find an interference with any commercial activity. They did not include the word substantial in the jury instructions. We have preserved that argument, but we think as a matter of law, as a question of law, the district judge was correct to say that this activity is not something that the jury should have even been allowed to address because it's not something that Congress can regulate, that it has to be a substantial interference with interstate commerce in order for – because when we're talking about an as-applied challenge, it's what as applied to what. It's a legal theory applied to the facts of this case, and we argue that the legal theory is wrong, and so it simply does not match up with the facts of this case. It's something – – assault occurs, and you've got – a fellow comes in, he's got a gun. He comes in – well, let's just say he comes in, and he beats up three or four people during Christmas season when Amazon has all these packages going out, and you're saying if there's any, I guess, slowing down of the service or it stops, that'll be enough. But in this instance, he comes in, individual's doing his job, he's in this preparation of the packages, whatever he does over there, and he does it purely for a hate reason, that that allows your client to say, well, I can do this and not violate the federal law, so I can go in and, you know, beat him up because he's gay, because he's not involved in – substantially involved in interstate commerce. Well, the defendant wouldn't have any control over the impact of the offense, any different than a defendant who burns down a – – informed conduct in the future, and it seems to me that what we hold in your position, in the future, an individual can simply look and say, well, Fourth Circuit says it's got to be substantial, and substantial is not just working in a place like Amazon or somewhere like it in which the government regulates the packaging and the way in which you do activities, and we can interfere with it as long as we don't interfere with it substantially, and from – that doesn't even go to a jury. We pretty much can just say we know that's not substantial. Well, that wouldn't be anything that the defendant has to know, any different than an arson. If a defendant burns down a building, the defendant doesn't have to know that that building is being used in interstate commerce. Well, if he wants to avoid prosecution, he could fix himself pretty well and make sure that property, as in Jones, is not property that's being used in interstate commerce, right? Well, he could be charged in – He first would make that determination. He could be charged in state court. Well, you can't be charged in Virginia here because Virginia doesn't have a statute like that. He could be charged with simple assault. You're not talking about the arson versus this situation. Well, he could be and was charged with assault. And we argue that that's an appropriate regulation because that's a result because that maintains the distinction between what is truly local and truly federal. And I think Lopez tells us that when we're looking at these cases, we have to come back to first principles. And what Lopez says is when there is a trivial impact on interstate commerce, Congress doesn't have the power to regulate. It simply doesn't have the power to regulate. Well, the government seems – I think this is one of the things the government argues, is that in order to reach the threshold of substantially affecting interstate commerce, they can aggregate a class of activities. So they're not limited to what actually occurred in this case. I think that's part of their argument. I think that is their argument, yes. What's your response to that argument? Morrison says that the only time we can aggregate those effects is when the regulated activity itself is an economic activity. And so that's why, for example, when we're talking about something that there's a market for, like homegrown wheat, homegrown marijuana, homemade child pornography, for example, even if those items never cross state lines, it affects the national market. There's no national market for an assault. A punch in the face is not a commodity that has any impact on interstate or international commerce. And so because the regulated activity here is not an economic act, which the government acknowledges the regulated activity here is a violent crime, we can't aggregate. And we can only, Congress can only regulate violent crimes when they have, each one has a substantial impact on interstate commerce. What do we make of Taylor versus United States where the court says it makes no difference that the actual threatened effect on commerce, in a particular case, is minimal? Well, that's because a Hobbs Act robbery is an economic act. The robbery in this court and the Supreme Court have both said that robbery is an involuntary transfer. It's a loss to the victim and a gain to the defendant. And even a local robbery affects national markets because if I take money from you, I don't have to get it from the ATM. And so that's why we can aggregate even if an individual victim. See, the problem with that theory when you're talking about Taylor is that's the theory that we adopted. We said that, rested our conclusion in part on the notion that robbery is itself fundamentally economic. The Supreme Court said, no, no, no, no, that's not necessary. Instead, and I'll read you the language, the court found straightforward, the case was straightforward and dictated by precedent because the underlying activity, the sale of marijuana, is unquestionably economic in nature. So it didn't matter whether the robbery was fundamentally economic or not. Well, keep in mind other circuits have held it was not an economic activity. Well, okay, then the distinction here is that not all street muggings are federal Hobbs Act robberies. It's robbery that interferes with, and the jurisdictional language there, which of course is not the jurisdictional language here, but in the Hobbs Act it says, interference with commerce over which the United States has jurisdiction. And so the drug dealing is what takes it from an ordinary street mugging to make it a federal Hobbs Act robbery because the drug dealing puts the person, like Gonzalez v. Raich, into a realm that Congress can regulate because it affects the national market. Homegrown drugs affect the national and international market for drugs. And so that's why the robbery of that person is a federal Hobbs Act robbery, whereas a mugging on the street from a person who's not engaged in any kind of commercial activity is not a federal robbery. That's the distinction with Taylor. Does that answer your question? Yeah, I know, but I know you only have a limited amount of time, so go ahead. I think if we look back at the first opinion in this appeal, the court in footnote five said that what had to happen on remand was to determine whether there was a substantial interference, substantial effect on interstate commerce. We took it back to the trial, we developed those facts, and they didn't pan out as the government had anticipated, and the facts as were developed did not show a substantial effect on interstate commerce. For that reason, the district judge was correct to rule that the government had not met its burden, correctly granted the Rule 29 motion, and we asked this court to affirm that judgment. Are there any other questions? Thank you, Your Honor. Your Honor, just briefly on the substantiality point that you all were talking about, in an as-applied challenge in any individual case, there need not be a substantial effect on interstate commerce, which is what the portion of the Taylor case that Judge Wynn was reading from says, and that's what this court has consistently held. What's really happening here is there's a conflation of two different things. One is what Congress must find to regulate in a category of conduct, and the second is what must be found in each individual case. Congress can only regulate a category of conduct under Lopez or Morrison if that category of conduct substantially affects interstate commerce. And this category of conduct, which is interference with commercial or economic activity in which a victim is engaged at the time of the conduct, Congress could rationally find that that category of conduct substantially affects interstate commerce because this Court and the Supreme Court have repeatedly told Congress that in other direct interference cases, such as the Arson Cases and the Hobbs Act cases. And so once Congress has made that determination, in each individual case there need not be substantiality, which is what this Court says every time it addresses one of the… The Supreme Court's been very clear to say that when you're considering the jurisdictional element, which you have to do here in order to get to where you want to go, that the purpose of the jurisdictional element is to show on a case-by-case basis that there is a specific connection to a cognizable commerce clause authority. So to me, that renders the aggregation argument more difficult to make because the other cases generally have a clear underlying economic activity. Otherwise, see how you get to the case-by-case application if you have sort of this generic jurisdictional element. Your Honor, but that's exactly what you have in the Arson Cases, the generic jurisdictional element that says you can't set fire to a piece of property that is used for some commercial purpose. And so, and that's been interpreted to mean that the building is actively employed for some commercial activity. And this jurisdictional language just makes that language more specific and more narrow in some ways by requiring that the victim be engaged in commercial activity at the time of the conduct. And that's, so the underlying activity here is, as Judge Mast pointed out, in Taylor, the underlying activity that was interfered with was drug dealing. And here, the underlying activity that's being interfered with is the victim's active preparation of goods for interstate shipment in this Amazon warehouse, which is unable to continue doing so. So I think that sort of answers the question. And then in terms of whether there needs to be an effect on Amazon, there's no case that says that a violent crime must affect the commercial activity of a corporate entity for Congress to criminalize it. Individuals engage in commercial economic activity, and if a violent crime directly interferes with an individual's ongoing act of commerce, that in and of itself is sufficient, and that's exactly what the statute requires. If there are no further questions, I'll just conclude by saying that Congress has made a rational determination here to protect people, the dignity and right of people, to be able to participate actively in the commercial marketplace without facing violence on one of these protected classes. A jury has vindicated that right in this case by saying that Curtis Tibbs should not be subjected to violence in his workplace because of who he is. And we ask that this court continue to vindicate that right by reversing the district court's decision and reinstating the jury's verdict. Thank you. Thank you very much. We will come down and say a little to the lawyers and then go to our next case.
judges: Diana Gribbon Motz, G. Steven Agee, James A. Wynn Jr.